UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Bankruptcy Appeal No. 04-40038-WGY

---

IN RE:  INDUSTRIAL COMMERCIAL ELECTRICAL, INC.,
I.C.E. MANAGEMENT CORP., and
I.C.E.-CONN, INC., Debtors

---

UNITED STATES OF AMERICA
(INTERNAL REVENUE SERVICE),
Appellant,

v.

OFFICIAL COMMITTEE OF UNSECURED CREDITORS
INDUSTRIAL COMMERCIAL ELECTRICAL, INC.,
I.C.E. MANAGEMENT CORP., and
I.C.E.-CONN, INC.,
Appellee.

---

## BRIEF OF THE APPELLEE

On Appeal from an Order of the
United States Bankruptcy Court for
the District of Massachusetts
(Western Division)

Bruce F. Smith, Esq.  (BBO No. 467900)
Howard P. Blatchford, Jr., Esq.  (BBO No. 045580)
Michael J. Fencer, Esq.  (BBO No. 648288)
JAGER SMITH P.C.
One Financial Center
Boston, Massachusetts 02111
(617) 951-0500

May 14, 2004

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................iii

STATEMENT OF APPELLATE JURISDICTION.................................................................... 1

STATEMENT OF ISSUES PRESENTED.................................................................................. 2

AND STANDARDS OF APPELLATE REVIEW ..................................................................... 2

    Issues Presented:...................................................................................................................... 2

    Standards of Review: ............................................................................................................... 4

STATEMENT OF THE CASE .................................................................................................... 4

    Course of Proceedings and Disposition Below:..................................................................... 5

    Facts Relevant to the Issues Presented: ................................................................................. 5

ARGUMENT................................................................................................................................ 10

    I.  This Court Should Affirm the Bankruptcy Court's Determination that 26 U.S.C. § 7491(a)(1) was Applicable at the Trial to Shift the Burden of Proof on the Administrative Claim to the IRS Because the Evidence Supports the Bankruptcy Court's Factual Findings that the Debtors Complied with the Requirements of 26 U.S.C. § 7491(a)(2)............................................................................................................. 10

        A.  The evidence supports the Bankruptcy Court's factual findings that the Debtors maintained all necessary records and cooperated with all actual requests made by the IRS for witnesses, information, and documents. ..........................................................13

        B.  A request for witnesses, information, or documents made by the IRS pursuant to 26 U.S.C. § 7491(a)(2)(B), or a determination or an assessment by the IRS of tax liability is a necessary prerequisite to a taxpayer's duty under 26 U.S.C. § 7491(a)(2)(A) to substantiate any items related to the tax liability of that taxpayer......................................................................................................................16

            1.  Management had no duty under 26 U.S.C. § 7491(a)(2)(A) at the Trial to substantiate any items related to its tax liability because the IRS neither stated the substantive basis for the Administrative Claim, nor made any other determination or assessment of the tax liability of Management. ....................................................................................................18

            2.  Management had no duty under 26 U.S.C. § 7491(a)(2)(A) at the Trial to substantiate any items related to its tax liability because at no time did the IRS make any requests pursuant to 26 U.S.C. § 7491(a)(2)(B) for access to the information or business records of the Debtors in connection with an examination or litigation concerning the tax liability of Management........................................................19

        C.  Even if a request for witnesses, information, or documents made by the IRS pursuant to 26 U.S.C. § 7491(a)(2)(B), or a determination or an assessment by the IRS of tax liability is not a necessary prerequisite to a taxpayer's duty under 26 U.S.C. § 7491(a)(2)(A) to substantiate any items related to tax liability, the evidence supports the Bankruptcy Court's finding that Management substantiated all items related to its tax liability. ..........................................................................................21

II.  The Bankruptcy Court Properly Determined that Credible Evidence Had Been Produced for the Purposes of 26 U.S.C. § 7491(a)(1) Requiring that the Burden of Proof Shift to the IRS........................................................................................................... 24

III.  This Court Should Affirm the Bankruptcy Court's Denial of the Motion to Continue Because that Denial Did Not Constitute a Serious Error of Law or Cause the IRS Substantial Prejudice............................................................................................................. 28

CONCLUSION................................................................................................................................. 30

# TABLE OF AUTHORITIES

**Cases**

Bath Iron Works Corp. v. Dir., Office of Workers' Compensation, 113 S. Ct. 692 (1993) ......... 15

BedRoc, Ltd., LLC  v. United States, 124 S. Ct. 1587 (2004) ...................................... 18

Comm'r v. Duberstein, 363 U.S. 364 (1960) ....................................................... 13

Correia v. Fitzgerald, 354 F.3d 47 (1st Cir. 2003) ............................................ 4, 28

Ferroline Corp. v. Gen. Aniline & Film Corp., 207 F.2d 912 (7th Cir. 1953).............................. 16

Gomez v. Rivera Rodriguez, 344 F.3d 103 (1st Cir. 2003) ........................................... 15

Griffin v. Comm'r, 315 F.3d 1017 (8th Cir. 2003)....................................................passim

Hall v. Comm'r, 175 F.2d 500 (2d Cir. 1949)...................................................... 18

In re Healthco Int'l, Inc., 257 B.R. 379 (Bankr. D. Mass. 2001) .................................... 11

Intrex, Inc. v. Comm'r, 321 F.3d 55 (1st Cir. 2003)........................................4, 13, 24, 26

Lowry v. Barnhart, 329 F.3d 1019 (9th Cir. 2003) ................................................ 2, 23

Okerlund v. United States, 53 Fed. Cl. 341 (2002) ................................................. 12

Oscanyan v. Arms Co., 103 U.S. 261 (1881) ....................................................... 16

Perrin v. United States, 444 U.S. 37 (1979) ..................................................... 18

Portillo v. Comm'r, 932 F.2d 1128 (5th Cir. 1991) ..........................................17, 19, 20

Raleigh v. Ill. Dept. of Revenue, 530 U.S. 15 (2000) ..........................................11, 28

Southern Pac. Trans. Co. v. Voluntary Purchasing Groups, Inc., 227 B.R. 788 (E.D. Tex. 1998)
................................................................................................ 14

United States v. Janis, 428 U.S. 433 (1976) .................................................... 24

United States v. Saccoccia, 58 F.3d 754 (1st Cir. 1995).........................................4, 28

**Statutes**

11 U.S.C. § 1102.................................................................................. 6

11 U.S.C. § 1106(a)(6) .......................................................................... 14

11 U.S.C. § 1109.................................................................................. 4

11 U.S.C. § 1109(b).............................................................................. 14

11 U.S.C. § 505................................................................................. 30

11 U.S.C. § 505(a) ............................................................................... 1

26 U.S.C. § 6871................................................................................ 30

26 U.S.C. § 7491...............................................................................11, 28

26 U.S.C. § 7491(a)(1) ................................................................................................ 12

26 U.S.C. § 7491(a)(2) ................................................................................................ 12

26 U.S.C. § 7491(a)(2)(B) ........................................................................................... 21

28 U.S.C. § 1334(a) ...................................................................................................... 1

28 U.S.C. § 157(a) ........................................................................................................ 1

28 U.S.C. § 157(b)(2) .................................................................................................... 1

28 U.S.C. § 158(a) ........................................................................................................ 1

**Rules**

Fed. Evid. 803(6) ........................................................................................................ 15

Fed. R. Bankr. P. 8013 .................................................................................................. 4

Fed. R. Bankr. P. 9014(c) ........................................................................................... 16

Fed. R. Bankr. P. 9017 ................................................................................................ 15

Fed. R. Evid. 703 ........................................................................................................ 15

Fed. R. Evid. 705 ........................................................................................................ 15

LR 201 .......................................................................................................................... 1

**Regulations**

26 C.F.R. § 601.109(a) ............................................................................................... 30

**Other Authorities**

The Oxford Encyclopedic Dictionary (1991) ............................................................... 18

## STATEMENT OF APPELLATE JURISDICTION

On September 6, 2002, Industrial Commercial Electrical, Inc. ("ICE"), I.C.E. Management Corp. ("Management") (together with ICE, the "Debtors"), and I.C.E.-CONN, Inc. commenced these insolvency proceedings by filing separate, voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. § 101 et seq. (the "Bankruptcy Code"). Pursuant to 28 U.S.C. § 1334, the district courts of the United States have original and exclusive jurisdiction in all cases under the Bankruptcy Code. 28 U.S.C. § 1334(a). Section 157 of Title 28 of the United States Code vests with the district courts of the United States the discretion to refer any or all cases under the Bankruptcy Code to the bankruptcy judges for their district, see 28 U.S.C. § 157(a), which discretion this Court has exercised by local rule, see LR 201.

The contested matter underlying this appeal is a core proceeding involving the allowance or disallowance of a claim against a bankruptcy estate in which a bankruptcy judge has the authority to enter a final order, see 28 U.S.C. § 157(b)(2), and, more specifically, one involving the tax liability of a bankruptcy estate, see 11 U.S.C. § 505(a). Lastly, pursuant to 28 U.S.C. § 158, Congress has conferred appellate jurisdiction upon this Court to hear appeals from final judgments, orders, and decrees of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges of this district. 28 U.S.C. § 158(a). Therefore, this Court has jurisdiction to review and affirm the order of the United States Bankruptcy Court for the District of Massachusetts underlying this appeal.

## STATEMENT OF ISSUES PRESENTED
## AND STANDARDS OF APPELLATE REVIEW

**Issues Presented:**[1]

1.      Whether the testimony and documentary evidence supports the trial judge's factual finding that the Debtors maintained all business records, and cooperated with all reasonable requests for information regarding the claimed deductions from the 2002 fiscal year losses of Management, when that testimony and documentary evidence showed that one or more of the witnesses presented at trial had personally examined, surveyed, and analyzed the books, records, and prior years tax returns kept by the Debtors in the normal course of their businesses, and that one or more of those witnesses had personally interviewed and otherwise consulted with the Debtors' management and outside tax professionals regarding the Debtors' business and tax affairs.

2.      Whether the testimony and documentary evidence supports the trial judge's factual finding that Management substantiated the claimed deductions from its 2002 fiscal year income, when that testimony and documentary evidence showed that one or more of the witnesses presented at trial had personally examined, surveyed, and analyzed the books, records, and prior years tax returns kept by the Debtors in the normal course of their businesses and relevant to the claimed deductions, and that one or more of those witnesses had personally

---

[1] Prior to trial, the Appellant did not conduct an examination of the relevant tax filings underlying this appeal, which it seemingly has since done, insofar as it has incorporated an examination into its brief, and outlined in detail for *this* Court the alleged bases for its claims, none of which were previously made known to the Appellee's or presented to the court below.  It is an axiomatic principal of appellate jurisprudence that only the *court* may supplement the record before it, and no party may unilaterally supplement the record on appeal with evidence or argument not presented for review by the court below. See Lowry v. Barnhart, 329 F.3d 1019, 1024-25 (9th Cir. 2003).  The Appellee, therefore, does not agree that the first issue designated by the Appellant in its brief in this matter is properly before this Court.

interviewed and otherwise consulted with the Debtors' management and outside tax professionals regarding the Debtors' business and tax affairs.

3.      Whether in making its findings of fact the trial judge justifiably relied on the testimony of the two witnesses, when the trial judge credited their testimony that one or more of those witnesses had personally examined, surveyed, and analyzed the books, records, and prior years tax returns kept by the Debtors in the normal course of their businesses, and furthermore that one or more of those witnesses had personally acquired first hand knowledge concerning the relevant facts and circumstances underlying the claimed deductions from the 2002 fiscal year income of Management.

4.      Whether, for the purposes of applying 26 U.S.C. § 7491(a)(1), the duty of a taxpayer under 26 U.S.C. § 7491(a)(2)(A) to substantiate any item related to that taxpayer's tax liability arises only in response to:  (i) an actual request or requests by the Internal Revenue Service pursuant to 26 U.S.C. § 7491(a)(2)(B) for witnesses, information, documents, meetings, or interviews regarding a specific item or items related to that taxpayer's tax liability; or (ii) an actual  determination or an assessment of tax liability against the taxpayer.

5.      Whether "credible evidence" had been presented at trial for the purposes of 26 U.S.C. § 7491(a)(1) with respect to the factual issues relevant to Management's tax liability, thereby shifting the burden of proof as to that liability to the Internal Revenue Service , when the trial judge credited the testimony of witnesses who had personally examined, surveyed, and analyzed the books, records, and prior years tax returns kept by the Debtors in the normal course of their businesses, and who had personally evaluated the Debtors' tax rights and prepared the Debtor's amended tax filings based upon his professional opinion and judgment.

6.      Whether the trial judge properly exercised his discretion by denying the emergency request of the Internal Revenue Service to continue the trial when the Internal Revenue Service proposed the discovery schedule adopted by the trial court, was initially provided with all documents it had requested, and did not thereafter make any requests for documents from or propound interrogatories upon the Debtors, or otherwise depose any of the persons identified as potentially having relevant or discoverable information.

**Standards of Review:**

On appellate review of the factual findings underlying a decision of a bankruptcy court, a United States District Court shall not set aside that trial court's factual findings, whether based on oral or documentary evidence, unless such findings are clearly erroneous, with due regard being given to the credibility attributed by the bankruptcy judge to the witnesses presented at trial.  Fed. R. Bankr. P. 8013; <u>see</u> <u>Intrex, Inc. v. Comm'r</u>, 321 F.3d 55, 58 (1st Cir. 2003) .  While  a bankruptcy court's statutory interpretations and rulings of law are reviewed *de novo,* <u>Intrex, Inc.</u>, 321 F.3d at 58, the denial by a bankruptcy judge of a motion to continue trial is reviewed on appeal only to determine whether there has been an abuse of the bankruptcy judge's discretion.  <u>Correia v. Fitzgerald</u>, 354 F.3d 47, 52 (1st Cir. 2003) (quoting <u>United States v. Saccoccia</u>, 58 F.3d 754, 770 (1st Cir. 1995)) .

**STATEMENT OF THE CASE**

This is an appeal by the United States Internal Revenue Service (the "IRS"), by and through the United States Department of Justice, from an order of the United States Bankruptcy Court for the District of Massachusetts, Western Division (Rosenthal, J.) (the "Bankruptcy Court"), sustaining the objection (the "Objection") of the Debtors, joined by the Official Committee of Unsecured Creditors (the "Committee"), <u>see</u> 11 U.S.C. § 1109, to the

*Request for Payment of Internal Revenue Taxes* filed by the IRS in the Debtors' cases seeking payment of $347,345.56 as an administrative priority pursuant to 11 U.S.C. § 503(b) (the "Administrative Claim").

**Course of Proceedings and Disposition Below:**

On November 19, 2003, the Bankruptcy Court conducted a trial on the Administrative Claim and the Objection during which the Bankruptcy Court heard the direct and cross-examination of two witnesses called by the Committee, and admitted into evidence three (3) documents offered by the Committee. On January 28, 2004, after considering the post-trial oral arguments and legal memoranda of the parties on the issue of which party bore the burden of proof on the validity of the Administrative Claim, the Bankruptcy Court issued its *Memorandum of Decision Regarding Objection to Administrative Claim of Internal Revenue Service* wherein, based upon its findings of fact and conclusions of law, the Bankruptcy Court sustained the Objection. On February 9, 2004, the IRS initiated this appeal.

**Facts Relevant to the Issues Presented:**

On September 6, 2002, the Debtors commenced these insolvency proceedings by filing separate, voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. (App. at pg. 313.) Since that time, the Debtors have continued in the possession of their assets as debtors-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108. On September 6, 2002, the Court granted the Debtors' motion for an order approving joint administration of the Debtors' cases. (App. at pgs. 1-3.) On September 11, 2002, the Court ordered that the Office of the United States Trustee appoint an examiner with expanded powers in the Debtors' cases, after which that office appointed as that examiner Stephen F. Wentzell, C.P.A., a certified public accountant with over twenty-two years of experience in the construction accounting field (the

"Examiner").  (App. at pgs. 9-10.)  On September 13, 2002 the United States Trustee formed the Committee pursuant to 11 U.S.C. § 1102. (App. at pgs. 11-12.)

In the course of fulfilling his expanded duties in the Debtors' cases, the Examiner identified substantial additional loss transactions of ICE beyond those previously identified prior to the filing by ICE of its original *U.S. Corporation Income Tax Return* (Form 1120) for fiscal year 2002, and determined that a reversal of certain management fees previously charged to ICE by Management for prior fiscal years may be appropriate.  (App. at pgs. 148-51; 314.)  Based upon the foregoing, the Examiner consulted with Paul E. Rogers, C.P.A., a certified public accountant and tax professional with over twenty-five years of experience in the corporate and individual taxation fields, regarding management fees charged to ICE by Management, as well as the possible amendment of the fiscal year 2002 federal income tax returns of both ICE and Management.  (App. at pgs. 149-51; 314.)

Upon Mr. Rogers' review of the Debtors' prior tax returns, and following discussions with the Examiner regarding account receivables adjustments made in the books and records of ICE by the Examiner, Mr. Rogers determined that a reversal of $450,000 in management fees charged to ICE by Management (the "Management Fees") was appropriate in light of the substantial losses incurred by ICE while under the oversight of Management.  (App. at pgs. 162-66; 314.)  Therefore, the Examiner engaged Mr. Rogers to prepare an *Amended U.S. Corporation Income Tax Return* (Form 1120X) for ICE's fiscal year 2002, (App. at pgs. 213-26), and an *Amended U.S. Corporation Income Tax Return* (Form 1120X) for Management's fiscal year 2002, (App. at pgs. 227-39) (together, the "Amended Returns"), to account for the reversal of the expense and income associated with the Management Fees for ICE and Management respectively.  (App. at pg. 314.)  The result of the changes made in the Amended

Returns was to diminish the ICE 2002 operating losses, and to increase the Management 2002

operating losses.  Based upon the increased Management operating losses, Mr. Rogers

determined that Management was entitled under federal tax law to carry-back those losses to

Management's prior tax years ending 1997, 1998, 1999, 2000, and 2001, and he prepared the

*Corporation Application for Tentative Refund* (Form 1139) (App. at pgs. 240-83) (the

"Application") that the Examiner caused to be filed with the IRS on December 15, 2002.

(App. at pgs. 152; 314.)  On May 22, 2003, the IRS remitted the amount of $347,345.56 to

Management on account of the Application (the "Refund").  (App. at pgs. 152; 314.)

On June 10, 2003, the Bankruptcy Court established July 8, 2003 as the deadline by

which any parties in interest in the Debtors' cases (with the exception of professionals

employed in the Debtors' cases) were to file any requests for payment of administrative

expenses pursuant to Bankruptcy Code § 503(b).  (App. at 58.)  On June 18, 2003, the IRS

filed the Administrative Claim seeking repayment of the Refund as an administrative priority

pursuant to 11 U.S.C. § 503(b)(1)(B)(ii), (App. at 69-70), notwithstanding that at no time

prior to or subsequent to the filing of the Administrative Claim has the IRS made an

assessment of tax or issued a notice of deficiency regarding either of the Debtors, (App. at

pgs. 206-07).  On July 9, 2003, the Debtors filed the Objection.  (App. at pgs. 71-72.)  On

July 31, 2003, the Bankruptcy Court held a preliminary hearing on the Administrative Claim

and the Objection, at which time the Committee joined the Objection and requested that the

Bankruptcy Court give the IRS sixty (60) days to review the propriety of the Refund.  (App. at

pgs. 81-82; 315.)  The IRS requested that the Bankruptcy Court grant to it ninety (90) days to

make the foregoing review (App. at pgs. 83; 315), which request the Bankruptcy Court

granted when it scheduled the trial of the Administrative Claim and the Objection for
November 19, 2003 (the "Trial").  (App. at pg. 89.)

On August 1, 2003, the Bankruptcy Court issued its *Contested Matter Prehearing
Order* directing the parties to, *inter alia*:  (i) make initial disclosures in accordance with Fed.
R. Bankr. P. 26 and Fed. R. Civ. P. 26(a); and (ii) prepare and file with the Court a *Joint
Prehearing Memorandum* on or before November 12, 2003.  (App. at pgs. 90-92.)  On August
28, 2003, the IRS served its initial disclosures pursuant to Fed. R. Bankr. 7026 and Fed. R.
Civ. P. 26(a), wherein the IRS did not identify any individuals likely to have discoverable
information that the IRS intended to use to support its claims or defenses.  (App. at pgs. 135-
40.)  On September 2, 2003, the Debtors and the Committee jointly served the *Initial
Disclosures of Debtors and Official Committee of Unsecured Creditors Pursuant to Fed. R.
Bankr. P. 9014(c) and 7026 and Fed. R. Civ. P. 26(a),* wherein they identified to the IRS the
name, address, and telephone number of each individual likely to have discoverable
information that the Debtors and the Committee intended to use to support their claims or
defenses, and identifying the subjects of that information.  (App. at pgs. 106-09.)

On August 28, 2003, the IRS filed with the Bankruptcy Court the *United States of
America's Proposed Discovery Plan Pursuant to Fed. R. Bankr. P. 9014(c) and 7026 and
Fed. R. Civ. P. 26(f)*, wherein the IRS requested that the Bankruptcy Court establish
November 5, 2003 as the discovery deadline.  (App. at pgs. 93-96.)  On September 2, 2003,
the Debtors and the Committee jointly filed the *Proposed Discovery Plan of Debtors and
Official Committee of Unsecured Creditors Pursuant to Fed. R. Bankr. P. 9014(c) and 7026
and Fed. R. Civ. P. 26(f)*, wherein they also requested that the Bankruptcy Court establish

November 5, 2003 as the discovery deadline, (App. at pgs. 97-99), which deadline the Bankruptcy Court set.  (App. at pgs. 100;101.)

On November 12, 2003, the Committee filed with the Bankruptcy Court and served upon counsel to the IRS the *Prehearing Memorandum of Official Committee of Unsecured Creditors Regarding Administrative Claim of Internal Revenue Service* wherein the Committee identified to the IRS the name, address, and telephone number of each fact and expert witness who the Committee expected to present, including, among others, the Examiner and Mr. Rogers.  (App. at pgs. 110-15.) On November 17, 2003, the IRS filed with the Bankruptcy Court its *Prehearing Memorandum* wherein the IRS did not identify by name any potential fact or expert witnesses, (App. at pgs. 116-19), as well as an emergency motion to continue the Trial (the "Motion to Continue"), (App. at pgs. 120-23), which the Bankruptcy Court denied, (App. at pg. 124).  On November 18, 2003, the Committee filed with the Bankruptcy Court and served upon counsel to the IRS the *Motion of Official Committee of Unsecured Creditors for Order Excluding Testimonial Evidence of Internal Revenue Service Pursuant to Fed. R. Bankr. P. 7037 and Fed. R. Civ. P. 37(c)* (the "Rule 37 Motion") wherein the Committee requested that the Bankruptcy Court enter an order excluding from evidence at the Trial the testimony of any witnesses offered by the IRS.  (App. at pgs. 125-30.)  Prior to the Trial, the Bankruptcy Court determined that the Rule 37 Motion was moot based upon the representation of the IRS that it would not offer any evidence at the Trial.  (App. at pgs. 131; 140-41.)

At the Trial, the Committee presented the testimony of the Examiner and Mr. Rogers, and the Bankruptcy Court admitted into evidence the Amended Returns, as well as the Application.  (App. at pg. 319.)  Following the direct and cross-examination of the witnesses,

the parties each argued that the other party bore the burden of proof as to the validity of the

Administrative Claim, after which the Bankruptcy Court directed the parties to submit legal

memoranda on that issue, which the parties duly filed.  (App. at pgs. 201-09; 319.)  On

January 28, 2004, the Bankruptcy Court issued its *Memorandum of Decision Regarding*

*Objection to Administrative Claim of Internal Revenue Service* wherein, based upon the

findings of facts and conclusions of law set forth therein, the Bankruptcy Court sustained the

Objection. (App. at pgs. 313-28; 329.)  On February 9, 2004, the IRS initiated this appeal.

## ARGUMENT

This Court should affirm the Bankruptcy Court's order sustaining the Objection

because the evidence presented at the Trial is sufficient to support the factual findings of the

Bankruptcy Court that the Debtors complied with the requirements of 26 U.S.C. § 7491(a)(2),

and further that credible evidence was presented for the purposes of 26 U.S.C. § 7491(a)(1)

mandating that the burden of proof shift to the IRS at the Trial, which the IRS failed to meet.

In addition, this Court should affirm the Bankruptcy Court's order denying the Motion to

Continue because, based upon the facts and circumstances known to the Bankruptcy Court,

that denial did not constitute an abuse of the bankruptcy judge's discretion.

**I.  This Court Should Affirm the Bankruptcy Court's Determination that 26 U.S.C. § 7491(a)(1) was Applicable at the Trial to Shift the Burden of Proof on the Administrative Claim to the IRS Because the Evidence Supports the Bankruptcy Court's Factual Findings that the Debtors Complied with the Requirements of 26 U.S.C. § 7491(a)(2).**

The Bankruptcy Court's factual findings that the Debtors complied with the

requirements of 26 U.S.C. § 7491(a)(2), and its determination that the burden shifting

provisions of 26 U.S.C. § 7491(a)(1) were applicable at the Trial, are each adequately

supported by the testimony of the witnesses and documentary evidence presented at the Trial.

As such, the Bankruptcy Court properly interpreted and applied the applicable substantive law to shift the burden of proof at the Trial on the validity of the Administrative Claim to the IRS.

The United States Supreme Court has held that "the burden of proof on a tax claim in bankruptcy remains where the substantive tax law puts it." Raleigh v. Ill. Dept. of Revenue, 530 U.S. 15, 26 (2000). Therefore, if the substantive tax "law assigns the burden of proof to the taxpayer, the taxpayer, or his trustee in bankruptcy, bears that burden; if that same law imposes the burden on the taxing authority, the same will be true in bankruptcy." See In re Healthco Int'l, Inc., 257 B.R. 379, 382 (Bankr. D. Mass. 2001) (Rosenthal, J.) (citing Raleigh, 530 U.S. at 25-26). The substantive law allocating the burden of proof in this matter states, in relevant part,[2] that "[i]f, in any court proceeding, a taxpayer introduces credible evidence with respect to any factual issue relevant to ascertaining the liability of the taxpayer for any tax

---

[2]  The full text of 26 U.S.C. § 7491, entitled "Burden of Proof," is as follows:

(a) Burden shifts where taxpayer produces credible evidence --

(1) General rule -- If, in any court proceeding, a taxpayer introduces credible evidence with respect to any factual issue relevant to ascertaining the liability of the taxpayer for any tax imposed by subtitle A or B, the Secretary shall have the burden of proof with respect to such issue.

(2) Limitations -- Paragraph (1) shall apply with respect to an issue only if -

(A) the taxpayer has complied with the requirements under this title to substantiate any item;

(B) the taxpayer has maintained all records required under this title and has cooperated with reasonable requests by the Secretary for witnesses, information, documents, meetings, and interviews; and

(C) in the case of a partnership, corporation, or trust, the taxpayer is described in section 7430(c)(4)(A)(ii). Subparagraph (C) shall not apply to any qualified revocable trust (as defined in section 645(b)(1)) with respect to liability for tax for any taxable year ending after the date of the decedent's death and before the applicable date (as defined in section 645(b)(2)).

(3) Coordination -- Paragraph (1) shall not apply to any issue if any other provision of this title provides for a specific burden of proof with respect to such issue.

(b) Use of statistical information on unrelated taxpayers -- In the case of an individual taxpayer, the Secretary shall have the burden of proof in any court proceeding with respect to any item of income which was reconstructed by the Secretary solely through the use of statistical information on unrelated taxpayers.

(c) Penalties -- Notwithstanding any other provision of this title, the Secretary shall have the burden of production in any court proceeding with respect to the liability of any individual for any penalty, addition to tax, or additional amount imposed by this title.

26 U.S.C. § 7491.

imposed by subtitle A (relating to income tax) . . . ., the [IRS] shall have the burden of proof with respect to such issue." 26 U.S.C. § 7491(a)(1) (parenthetical supplied).  Therefore, while it is implicit in 26 U.S.C. § 7491(a)(1) that the taxpayer bears at least the initial burden of producing credible evidence that the taxpayer is entitled to the relief sought, once the taxpayer has satisfied that initial burden, the burden of proof then expressly shifts to the IRS to establish the taxpayer's liability.  26 U.S.C. § 7491(a)(1); see Griffin v. Comm'r, 315 F.3d 1017, 1021-22 (8th Cir. 2003).

In order for a corporate taxpayer to be permitted to avail itself of the burden shifting provisions of 26 U.S.C. § 7491(a)(1), a trial court must first be satisfied from the evidentiary record that such a corporate taxpayer has:  (i) maintained all records required under Title 26 of the United States Code; (ii) cooperated with all reasonable requests of the IRS, if any, for witnesses, information, documents, meetings, and interviews; (iii) substantiated, when required, any item relating to the tax liability of that corporate taxpayer; and (iv) a net worth of $7 Million or less.  See 26 U.S.C. § 7491(a)(2); see also Okerlund v. United States, 53 Fed. Cl. 341, 356 n.24 (2002).  Consequently, whenever a trial judge finds from the testimony and documentary evidence, as the Bankruptcy Court did, that a corporate taxpayer satisfied the requirements of 26 U.S.C. § 7491(a)(2), and that the corporate taxpayer also produced credible evidence with respect to any factual issue relevant to that corporate taxpayer's tax liability, as also happened in this case, Congress has mandated that the burden of proof must then shift to the IRS as a matter of law.

**A. The evidence supports the Bankruptcy Court's factual findings that the Debtors maintained all necessary records and cooperated with all actual requests made by the IRS for witnesses, information, and documents.**

This Court should affirm the Bankruptcy Court's factual findings that the Debtors maintained all necessary records, and cooperated with all actual requests of the IRS for witnesses, information, and documents because those factual findings are amply supported by the evidence and are therefore not clearly erroneous. The factual findings of a bankruptcy judge will not be set aside on review unless those findings are so clearly erroneous that "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Intrex, Inc. v. Comm'r, 321 F.3d 55, 58 (quoting Comm'r v. Duberstein, 363 U.S. 364, 395 (1960) (citations omitted)). As set forth in its thorough and well reasoned decision, the Bankruptcy Court found that the Debtors had maintained all necessary records, and cooperated with all of the actual requests of the IRS for witnesses, information, and documents, which factual findings are consistent with and supported by the testimony and documentary evidence before the Bankruptcy Court.

At the Trial, the Committee presented the testimony of the Examiner and Mr. Rogers,[3] both of whom are licensed certified public accountants with approximately forty-seven (47) years collective experience in their respective specializations, (App. at pgs. 147-48; 157-58), and whose testimony the bankruptcy judge observed first hand and expressly found to be

credible.  (App. at pg. 325.)  Specifically, the Examiner testified that from September 2002

forward he had control over and in fact conducted an investigative review of the Debtors'

business records, (App. at pgs. 146; 148; 191), the results of which were, among others, the

preparation by the Examiner of his report describing those records and the information set

forth therein, as well as the completion of tax returns and amended tax returns for the

Debtors' tax year 2002 that were predicated on those business records.[4]  (App. at pgs. 13-53;

213-26; 227-39).  In addition, the Examiner testified that he had engaged in various

conversations with others, including Daniel J. Kennedy, C.P.A., the Debtors' former chief

financial officer, regarding the Debtors' books and records and certain tax returns for the

Debtors.  (App. at pgs. 323-24.)

---

[3] In its brief, the IRS argues that the Committee is not the proper advocate of the interests of the Debtors' estate in this appeal, and it therefore not entitled to avail itself of the provisions of 26 U.S.C. § 7491(a)(1) on behalf of the Debtors' estate.  Section 1109(b) of the Bankruptcy Code, however, confers statutory standing upon a "party in interest, including . . . a creditors' committee, . . . [to] appear and be heard on *any issue* in a case under [Chapter 11 of the Bankruptcy Code]."  11 U.S.C. § 1109(b) (emphasis supplied).  This standing of a creditors' committee to appear and be heard on any issue extends not only to any trials held in a Chapter 11 bankruptcy case, but also to any appeals ensuing thereafter.  See Southern Pac. Trans. Co. v. Voluntary Purchasing Groups, Inc., 227 B.R. 788, 792-93 (E.D. Tex. 1998).  Therefore, not only does the Committee have standing to participate in this appeal, it also has the statutory right to file its own brief in support of the Bankruptcy Court's order sustaining the Objection.

[4] In an attempt to undermine the adjustments made to the revenues of ICE and Management based upon the Examiner's first hand discoveries that ICE's 2002 revenues were substantially overstated, the IRS asserts that the Examiner was not authorized to make these adjustments, or to assert tax related claims based thereon.  Such an argument should be soundly rejected because the order of the Bankruptcy Court appointing the Examiner not only provided that officer with the expanded powers needed to "supervise all aspects of the Debtors' business," (App. at pgs. 9-10), but also directed the Examiner to ensure that the Debtor timely performs it obligations under Chapter 11 [of the Bankruptcy Code]," (App. at pg. 10), including the filing of tax returns as required by state and federal law.  See 11 U.S.C. § 1106(a)(6).  Therefore, not only was the Examiner authorized to make the adjustments underlying the Amended Returns and the Application, he was obligated to do so, both by statute, and by the Bankruptcy Court order appointing him.

Based upon the credible testimony of the Examiner, and the documents in evidence,[5] the Bankruptcy Court properly inferred and found that the Debtors did in fact maintain its required business records, expressly rejecting the argument of the IRS that the absence of those business records from the Bankruptcy Court at the Trial proved they do not exist. (App. at pg. 325.) Rather, the Bankruptcy Court pointed out that the failure of the IRS to conduct its investigation of the Refund prior to the Trial was largely the reason those business records were not produced at the Trial, thereby correctly refusing to read 26 U.S.C. § 7491(a)(2) as requiring the Debtors' estate to appear at the Trial under the circumstances with *all* of their business records for the prior five tax years.

In addition to affirming the Bankruptcy Court's factual finding that the Debtors maintained all necessary records in accordance with 26 U.S.C. § 7941(a)(2)(B), this Court should also affirm the Bankruptcy Court's factual findings that the Debtors and the Committee cooperated with all of the actual requests of the IRS for witnesses, information, and documents. In a colloquy between the Bankruptcy Court and the parities prior to the Trial, counsel to the Committee advised the Bankruptcy Court, and the IRS did not dispute, that: (i) within days of the July 31, 2003 preliminary hearing on the Administrative Claim

---

[5] The IRS assigned error to the Bankruptcy Court's reliance on the testimony and the exhibits, characterizing that evidence as hearsay. The IRS ignores, though, that the Examiner, in addition to being a construction accounting expert, is a percipient witness with first hand knowledge derived from his investigation of the Debtors' affairs, though he applied his expertise to the facts. See Gomez v. Rivera Rodriguez, 344 F.3d 103, 112-15 (1st Cir. 2003). Additionally, Mr. Rogers was entitled, as a tax expert, to rely on facts provided to him by others. See Fed. R. Bankr. P. 9017; Fed. R. Evid. 703; Fed. R. Evid. 705. As the IRS did not object to these experts' status below, it has therefore waived that issue on appeal. See Bath Iron Works Corp. v. Dir., Office of Workers' Compensation, 113 S. Ct. 692, 698 n.12 (1993). Also, nowhere in its opinion did the Bankruptcy Court indicate that it accepted as the truth of any one or more statements set forth in the exhibits, though because those documents were admissible evidence, see Fed. R. Bankr. P. 9017; Fed. R. Evid. 803(6), the Bankruptcy Court was entitled to draw any reasonable inferences therefrom, including, among others, that the Debtors maintained business records, and filed various tax returns as required and permitted by law, including the Amended Returns and the Application.

and the Objection, the Committee transmitted to the IRS copies of all documents the IRS had

then requested (App. at pgs. 135-38); (ii) that the Committee had timely made its initial

disclosures to the IRS disclosing to it the name, address, and telephone number of each

individual likely to have discoverable information relative to the Administrative Claim and

the Objection (App. at pgs. 125-36); and (iii) that the IRS had not *at any time* formally

requested the production of documents, propounded interrogatories, or noticed the deposition

of any potential witnesses, (App. at pgs. 125-36).  See Ferroline Corp. v. Gen. Aniline & Film

Corp., 207 F.2d 912, 916-17 (7th Cir. 1953) (citing Oscanyan v. Arms Co., 103 U.S. 261, 263

(1881)) (admissions by counsel during course of trial binding on client).  On the contrary,

notwithstanding that the IRS had all of the documents it ever sought in its own records, and

that the IRS had available to it all the customary discovery mechanisms, see Fed. R. Bankr. P.

9014(c), it made only two informal document requests, one of which was made after the close

of discovery on November 5, 2003.  As such, this Court should affirm the Bankruptcy Court's

factual findings that the Debtors, in accordance with 26 U.S.C. § 7941(a)(2)(B), maintained

all necessary records, and fully cooperated with all actual requests of the IRS for witnesses,

information, and documents.

   **B.  A request for witnesses, information, or documents made by the IRS pursuant to 26
   U.S.C. § 7491(a)(2)(B), or a determination or an assessment by the IRS of tax liability is a
   necessary prerequisite to a taxpayer's duty under 26 U.S.C. § 7491(a)(2)(A) to substantiate
   any items related to the tax liability of that taxpayer.**

   For the purpose of applying 26 U.S.C. § 7491(a)(1), no duty of a taxpayer under 26

U.S.C. § 7491(a)(2)(A) to substantiate any item related to that taxpayer's tax liability arises

unless and until the IRS or its agents makes an actual request or requests pursuant to 26

U.S.C. § 7491(a)(2)(B) for access to witnesses, information, or documents during an

examination or litigation concerning the taxpayer's tax liability, or otherwise makes an actual

determination or an assessment of tax liability against that taxpayer, because such a statutory interpretation is consistent with the Congressional intent in enacting 26 U.S.C. § 7491. Therefore, this Court should hold that Management had no duty to comply with the requirements of 26 U.S.C. § 7491(a)(2)(A) at the Trial.

As the Bankruptcy Court properly noted in its analysis of 26 U.S.C. § 7491, that statute was the Congressional response to its concern "that individual and small business taxpayers frequently are at a disadvantage when forced to litigate with the [IRS]." (App. at pgs. 322-23; 337.) Also, it was Congress's perception that the "facts asserted by the individuals and small business taxpayers who cooperate with the IRS and satisfy the relevant recordkeeping and substantiation requirements should be accepted," and further that "shifting the burden of proof to the [IRS] in such circumstances [would] create a better balance between the IRS and such taxpayers, without encouraging tax avoidance." (App. at pgs. 322-23.) Based upon this legislative history, the Bankruptcy Court correctly concluded that Congress's enactment of 26 U.S.C. § 7491 was an express "effort to level the playing field in tax cases." (App. at pgs. 322-23.)

Noting that the Debtors' estate was given no prior notice of the substantive basis for the Administrative Claim, and guided by the clear Congressional intent of 26 U.S.C. § 7491, the Bankruptcy Court refused to permit the IRS to avoid the counteractive purpose of that statute by first failing or refusing to state the substantive basis for the Administrative Claim, and second by failing or refusing to put the Debtors' estate on notice of that basis, if any, by fulfilling its duty to conduct an examination of the Debtors' tax filings and business records, see Portillo v. Comm'r, 932 F.2d 1128, 1134 (5th Cir. 1991), or otherwise engaging in the discovery process. As such, since it is most consistent with Congress' purpose, this Court

should adopt the Bankruptcy Court's sound reasoning and implied conclusion that, for the

purposes of 26 U.S.C. § 7491(a)(1), trial courts must apply the substantiation requirements of

26 U.S.C. § 7491(a)(2)(A) with some flexibility when the IRS has neither articulated the

substantive basis for its position in a determination or an assessment, or has not otherwise

provided the taxpayer with guidance through the examination or discovery process as to what

items require substantiation.

### 1. Management had no duty under 26 U.S.C. § 7491(a)(2)(A) at the Trial to substantiate any items related to its tax liability because the IRS neither stated the substantive basis for the Administrative Claim, nor made any other determination or assessment of the tax liability of Management.

Management had no duty at the Trial to the substantiate any items related its tax

liability because the IRS failed or refused to bring any particular item relating to

Management's tax liability for its fiscal year 2002 into question, nor did the IRS make an

adequate determination or assessment of Management's tax liability for its fiscal year 2002.

As such, Management had no duty at the Trial to substantiate any items related its tax liability

because no events had occurred giving rise to that duty.

The verb "substantiate" is not defined by the Internal Revenue Code, 26 U.S.C. § 1, et

seq., but its ordinary everyday meaning of "prov[ing] the truth of," or "giv[ing] good grounds

for," The Oxford Encyclopedic Dictionary, 1443 (1991); see BedRoc, Ltd., LLC  v. United

States, 124 S. Ct. 1587, 1593-94 (2004) (citing Perrin v. United States, 444 U.S. 37, 42

(1979)), connotes behavior or conduct responsive to specific some challenge or inquiry.

Moreover, given the voluntary, self-assessing nature of the federal tax system in the United

States, see Hall v. Comm'r, 175 F.2d 500, 502 (2d Cir. 1949), it is only logical to interpret the

substantiation requirement of any claim made by a given taxpayer as arising only in response

to a specific challenge or inquiry by the IRS as to that particular claim.  Therefore, this Court

should hold as matter of law that a taxpayer has no duty to substantiate any item related to that taxpayer's tax liability unless and until the IRS has made a determination or an assessment in which it has sufficiently stated the substantive basis for the tax liability assessed thereby.

In this case, the IRS made *no* determination or assessment regarding the tax liability of any of the Debtors sufficient to challenge the claims made by ICE and Management in the Amended Returns or the Application. Even if this Court were to deem the Administrative Claim to be a determination or an assessment as and against ICE or Management, that determination or assessment must fail as inadequate, having been made without first investigating the claims made in the Amended Returns and the Application, see Portillo, 932 F.2d at 1134, and without a thoughtful and considered analysis and verification of the alleged tax liability of ICE and Management, id. at 1132. Consequently, Management had no duty at the Trial to the substantiate any items related its tax liability for its fiscal year 2002.

**2. Management had no duty under 26 U.S.C. § 7491(a)(2)(A) at the Trial to substantiate any items related to its tax liability because at no time did the IRS make any requests pursuant to 26 U.S.C. § 7491(a)(2)(B) for access to the information or business records of the Debtors in connection with an examination or litigation concerning the tax liability of Management.**

Management also had no duty at the Trial to the substantiate any items related its 2002 tax liability because the IRS made no actual requests for access to, or to examine the business records relating to Management's 2002 tax liability. As set forth above, the very nature of a taxpayer's substantiation duty dictates that such a duty arises only in response to specific requests made by the IRS or its agents for access to witnesses, information, documents, meetings, and interviews that the IRS claims are needed to substantiate a particular claim brought into question by the IRS. Even in the absence of any express statement by the IRS or

its agents as to what items the IRS may find questionable, any such inquiry would in all

likelihood put the taxpayer on notice, or otherwise give the taxpayer some guidance as to

what items the IRS deemed questionable, thereby assisting the taxpayer in preparing to defend

its claims.  In this instance, however, the IRS gave no prior notice, express or implied, as to

precisely what items in the Amended Returns and the Application, if any, were questionable,

and nor could it have done so, having failed in its duty to investigate those claims.  See

Portillo v. Comm'r, 932 F.2d at 1134.  This Court should not now permit the IRS to use its

very own failures to defeat the clear intent of Congress that the IRS no longer be permitted to

appear in court empty handed, without having conducted an investigation of its claims, or

therefore without any justification for those claims.

      The practical consequence of strictly interpreting a taxpayer's duty to substantiate at

trial any and all items relating to tax liability for the purposes of applying 26 U.S.C. §

7491(a)(1) is to permit the IRS to sidestep its statutory burden of proof by issuing

uninformative notices and assessments of tax liability that are based upon little or no

examination or analysis, and, in instances of litigation, by refusing to participate in the

discovery process, leaving the taxpayer ill prepared to proceed at trial, or, in the alternative,

forcing that taxpayer to appear at trial with every conceivable business record relevant to its

tax liability for any number of years.  Surely this cannot be the blueprint Congress envisioned

to eliminate the disadvantage suffered by individual and small business taxpayers when

dealing with the IRS.  Consequently, this Court should hold that Management had no duty at

the Trial to the substantiate any items related its tax liability for its fiscal year 2002 because

the IRS had neither articulated the substantive basis for its position in a determination or an

assessment, nor had it otherwise provided the Debtors' estate with guidance through an examination or discovery requests as to what items required substantiation.

**C. Even if a request for witnesses, information, or documents made by the IRS pursuant to 26 U.S.C. § 7491(a)(2)(B), or a determination or an assessment by the IRS of tax liability is not a necessary prerequisite to a taxpayer's duty under 26 U.S.C. § 7491(a)(2)(A) to substantiate any items related to tax liability, the evidence supports the Bankruptcy Court's finding that Management substantiated all items related to its tax liability.**

Even if a taxpayer's duty to substantiate items related to the taxpayer's tax liability arises in the absence of an actual request by the IRS or its agents for access to witnesses, information, documents, meetings, and interviews made in connection with an examination or litigation, or an actual  determination or an assessment of tax liability against that taxpayer, this Court should nevertheless affirm the Bankruptcy Court's factual finding that Management substantiated the claimed deductions because that finding is supported by the testimony and evidence produced at the Trial.

In this case, the Debtors' estate presented the testimony[6]  of two certified public accountants with over forty-five years collective experience who substantiated the reasons for and the propriety of the reversal of the Management Fees, as well as the reasons for and the propriety of the filing of the Amended Returns and the Application.  Specifically, the Examiner testified that subsequent to the filing of the Debtors' 2002 tax returns he had, in the course of attempting to collect the Debtors' account receivables, engaged in first hand conversations with representatives of various account debtors who verified to the Examiner's professional satisfaction that many of the account receivables created during prior tax years

_____

[6] The premise of the IRS's argument regarding substantiation is that it only accomplished with documentary evidence.  That argument, though, is at odds not only with federal evidentiary rules, but also the very statute in question, which specifically refers to facts gathered from "*witnesses*, *information*, documents, *meetings*, and *interviews*."  26 U.S.C. § 7491(a)(2)(B).  Therefore, this Court reject the contention that the Debtors' only means of substantiating their claims was by documentary evidence.

were comprised of duplicate billings and erroneous advance billings for work not then

performed, (App. at pgs. 154-55), and that such errors amounted to as much as a $700,000

overstatement of ICE's revenues for prior tax years, (App. at pg. 195).  The Examiner

elaborated to the Bankruptcy Court that these discoveries concerning the account receivables

made it "readily apparent [to the Examiner] that a substantial volume of erroneous receivables

and revenue existed relating to the period prior to June 30, 2002, which formed the foundation

for [the Examiner] seeking professional advice as to how to go about amending the very

return that was filed by Mr. Kennedy that [the Examiner] allowed him to file, and that formed

the basis for the ultimate carry back claim."  (App. at pgs. 154-55.)   Based upon these first

hand findings, the Examiner sought the services of Mr. Rogers, to whom he explained those

findings regarding the revenues of ICE.  (App. at pgs. 149-50.)

    Additionally, after giving uncontroverted testimony of his credentials upon which the

Bankruptcy Court found him to be an expert in the areas of accounting and corporate taxation,

(App. at pgs. 157-58), Mr. Rogers testified in detail regarding his role in preparing the

Amended Returns and the Application.  First, Mr. Rogers testified that he was approached by

the Examiner to consult on the possibility that one or more of the Debtors may be entitled to

amend prior tax returns and possibly make application for a carry back claim for a income tax

refund.  (App. at pgs. 159-61.)  Mr. Rogers testified that he personally reviewed the prior tax

returns filed by ICE and Management provided to him by the Examiner, (App. at pg. 159),

and had first hand discussions with the Examiner regarding the increased losses sustained by

ICE, (App. at pgs. 159-61).  Mr. Rogers also testified that the Examiner informed him that

Management historically charged ICE a management fee each year that was predicated on the

success of ICE during any fiscal year, (App. at pgs. 163-64), and that as an experienced

accounting and tax professional, Mr. Rogers was familiar with the use and calculation of such fees, (App. at pgs. 163-64).  Based upon the information and facts made known to him by the Examiner, Mr. Rogers concluded that, in his professional opinion, ICE had actually sustained greater losses than those reported in it original 2002 tax return, and further that, in his professional opinion, Management had not earned $450,000 of the management fees it had previously charged ICE.  (App. at pgs. 164-65.)  Consequently, Mr. Rogers, reasonably relying on information provided by the representative of a taxpayer, and applying his professional expertise and experience, prepared for the Examiner the Amended Returns and the Application which the Examiner caused to be filed with the IRS.

The cross examination by the IRS of the Examiner and Mr. Rogers focused almost entirely on the sources of those witnesses' personal knowledge regarding the ICE revenues for the 2002 tax year, as well as whether or not Management provided any value to ICE in exchange for the Management Fees, and did little, if anything, to discredit the knowledge or expert opinions of either.  In addition, the IRS, in its cross examination did not explore -- much less establish --  that any particular aspect of the Amended Returns or the Application, all exhibits admitted into evidence by the Bankruptcy Court, were in any way facially incorrect or improper, nor did it do so in its post-trial filings with the Bankruptcy Court.[7] After considering the detail of their testimony, and giving further consideration to the fact that the IRS had not at anytime advised the Debtors as to precisely what issues existed in the Amended Returns or the Application, if any, the Bankruptcy Court properly credited the testimony of both the Examiner and Mr. Rogers regarding the facts and their opinions.  This

---

[7] As earlier stated, the IRS has now incorporated its examination into its brief, and therefore should be disregarded as improper supplementation and argumentation.  See Lowry, 329 F.3d at 1024-25.

Court, then, should affirm the Bankruptcy Court's factual finding that Management substantiated the claimed deductions because that finding is adequately supported by the evidence and is therefore not clearly erroneous.

## II.  The Bankruptcy Court Properly Determined that Credible Evidence Had Been Produced for the Purposes of 26 U.S.C. § 7491(a)(1) Requiring that the Burden of Proof Shift to the IRS.

The Bankruptcy Court correctly determined that credible evidence within the meaning of 26 U.S.C. § 7491(a)(1) had been produced, requiring that the burden of proof shift to the IRS because the quality of that evidence was, after critical analysis, sufficient for the Bankruptcy Court to base its decision in the absence of any contrary evidence.  Consequently, the burden proof properly shifted to the IRS at the Trial.

As a general rule, the burden of proof rests with the taxpayer to demonstrate that a determination of the IRS is in error, see Intrex, Inc., 321 F.3d at 58 (citing United States v. Janis, 428 U.S. 433, 440 (1976)), though "[o]nce 'a taxpayer introduces credible evidence with respect to any factual issue' the burden shifts to the IRS on that issue," Intrex, Inc., 321 F.3d at 58 (quoting 26 U.S.C. § 7491(a)(1)).  Thus, the issues before this Court with regard to the Bankruptcy Court's application of 26 U.S.C. § 7491(a)(1) are first whether the Bankruptcy Court's interpretation of the term "credible evidence" as used in that statute is consistent with the intent of Congress, and second, if the Bankruptcy Court properly applied that statutory interpretation to its factual findings in this matter.

An interpretation of what constitutes "credible evidence" for the purposes of 26 U.S.C. § 7491(a)(1) is a legal issue that the United States Court of Appeals for the Eighth Circuit recently addressed in its decision in Griffin v. Comm'r, 315 F.3d 1017 (8th Cir. 2003).  In Griffin, the taxpayers claimed in their personal income tax returns an entitlement to deduct

business related expenditures from their personal income.  Griffin, 315 F.3d at 1018.

Following an audit by the IRS of the tax returns in question, the IRS issued a notice of

deficiency asserting a tax liability against the taxpayers for the subject deductions, which the

taxpayers subsequently disputed by petition to the United States Tax Court.  Id.   At the outset

of trial, after submitting stipulated facts and exhibits to the trial court, both parties asserted

that the other bore the burden of proof as to the claimed deductions.  Id. at 1019.  When the

trial court determined that the taxpayers had not yet presented "credible evidence" in the

stipulated facts and exhibits sufficient to shift the burden of proof to the IRS, one of the

taxpayers testified as to the basis for the payments, as did the certified public accountant who

had prepared income tax returns in question.  Id.   Though the IRS cross examined both

witnesses, it presented no witnesses in support of its assessment.  Id.

On review of the trial court's determination that the taxpayers failed to present

"credible evidence" under 26 U.S.C. § 7491(a)(1) sufficient to shift the burden of proof to the

IRS, the Griffin Court adopted the definition of "credible evidence" offered by the IRS, and

lifted directly from the legislative history of that statute, and held that a taxpayer satisfies the

burden of producing "credible evidence" for the purposes of 26 U.S.C. § 7491(a)(1) when that

taxpayer produces "the quality of evidence which, after critical analysis, the court would find

sufficient upon which to base a decision on the issue *if no contrary evidence were submitted*

(without regard to the judicial presumption of IRS correctness)."  Griffin, 315 F.3d at 1021

(emphasis and parenthetical in original).  Applying that definition to the record before it, the

Griffin Court determined that the taxpayers *had* produced evidence sufficient for the trial

court to have based its decision on the claimed deduction when faced with no evidence to the

contrary, or any presumption of correctness.  Id. at 1021-22.  Since the trial court erroneously

failed to shift the burden of proof to the IRS, though, and therefore did not make any factual findings based upon the stipulated facts and other evidence concerning the issue of whether or not the IRS had met its burden of proof, the Griffin Court remanded the matter with instructions that the trial court make new findings of fact on that issue in light of the shifted burden of proof.  Id. at 1022.

While it did not elaborate any particular standard to be applied by trial courts, the United States Court of Appeals for the First Circuit has also recently had occasion to apply the provisions of 26 U.S.C. § 7491(a)(1).  See Interex, Inc. v. Comm'r, 321 F.3d 55 (1st Cir. 2003).  In that case, the taxpayer claimed a $65,000 business deduction pursuant to 26 U.S.C. § 162 for allegedly accrued but unpaid professional fees that the IRS challenged by the issuance of a notice of deficiency.  Interex, Inc., 321 F.3d at 57.  At trial, a representative of the corporate taxpayer testified that the professional in question had never invoiced the taxpayer, nor was that representative aware of the services purportedly performed in exchange for the professional fees deducted.  Id. at 58.  Moreover, despite apparent requests by the IRS for documentation supporting the claimed deduction, both the taxpayer and the professional involved refused to produce any such documents.  Id. at 58.  On review of the United States Tax Court's determination that the taxpayer had not presented credible evidence at trial so as to shift the burden of proof to the IRS, the First Circuit affirmed that determination on the basis that the taxpayer had presented *no* evidence as to the validity of the claimed deduction, thereby failing to establish a record upon which a trial court could to base a decision on the issue in the absence of other evidence to the contrary.

Similar to the Griffin case, but unlike the Intrex case, the Committee here presented the testimony of *two* certified public accountants, with over forty-five years collective

experience, substantiating the reasons for and the propriety of the reversal of the Management Fees, as well as for the filing of the Amended Returns and the Application. The Examiner testified that upon his appointment in the Debtors' cases in September 2002, he authorized the filing of the Debtors' original June 2002 tax returns prepared by Mr. Frye. (App. at pgs. 149-50). The Examiner further testified that subsequent to the filing of those tax returns he personally spoke with representative of various of the Debtors' account debtors who verified to the Examiner's professional satisfaction that many of the ICE's account receivables were invalid or uncollectable, (App. at pgs. 154-55), and that such errors amounted to as much as a $700,000 overstatement of ICE's revenues for prior tax years, (App. at pg. 195). The Examiner also explained that these discoveries prompted the Examiner to seek the professional advice of Mr. Rogers as to how to amend prior returns and make application for any possible refunds. (App. at pgs. 154-55.)  Mr. Rogers likewise testified in detail regarding the bases for and the preparation of the Amended Returns and the Application, including the first hand information and data he gathered from the Examiner and his review of prior years tax returns, as well as the manner in which he determined and verified the amount of the management fee to be reversed as between ICE and Management. (App. at pgs. 159-61.)

As discussed above, the cross examination by the IRS of theses witnesses focused on issues other than the basis for the deductions or the calculations thereof, and obviously did little to sway the Bankruptcy Court's assessment of the credibility of those professionals. Unable to undermine the credibility of the evidence presented by the Debtors' estate at the Trial, the IRS, nonetheless, presented no evidence of its own that the Debtors improperly claimed the Refund.

Based on the foregoing, the Bankruptcy Court correctly determined that under the substantive law allocating the burden of proof in this matter, <u>Raleigh</u>, 530 U.S. at 26; 26 U.S.C. § 7491(a), credible evidence existed which, without evidence to the contrary, and without reference to any evidentiary presumptions, was sufficient to shift the burden of proof to the IRS, and further that the IRS failed to meet that burden.  <u>See</u> <u>Griffin</u>, 315 F.3d at 1021. As such, this Court should affirm the Bankruptcy Court's order sustaining the Objection.

### III.  This Court Should Affirm the Bankruptcy Court's Denial of the Motion to Continue Because that Denial Did Not Constitute a Serious Error of Law or Cause the IRS Substantial Prejudice.

This Court should affirm the Bankruptcy Court's order denying the emergency request of the IRS to continue the Trial because, based upon the facts and circumstances known to the Bankruptcy Court, the denial of that motion constituted a proper exercise of the Bankruptcy Court's discretion.  The discretionary denial by a bankruptcy judge of a motion for the continuance of a trial should not be disturbed on appeal unless the appellate court's canvass of the record indicates that there has been abuse of that discretion rising to the level of "a serious error of law or . . . a meaningful lapse of judgment, resulting in substantial prejudice to the movant."  <u>Correia v. Fitzgerald</u>, 354 F.3d 47, 52 (1st Cir. 2003) (quoting <u>United States v. Saccoccia</u>, 58 F.3d 754, 770 (1st Cir. 1995)).  Since the Bankruptcy Court's denial of the Motion to Continue implicated only the timing of the Trial that was scheduled subsequent to a discovery period specifically requested by the IRS, and since the Debtors bore the initial burden of producing credible evidence, this Court should affirm the Bankruptcy Court's order denying the continuance of the Trial because that denial did not rise to the level of a serious error of law, or cause the IRS substantial prejudice.

At the time that the Bankruptcy Court denied the Motion to Continue, the following facts and circumstances were known to it:  (i) that counsel to Flagship Bank & Trust Co. had represented that the settlement it entered into with he Committee was predicated on a resolution of the Administrative Claim and the Objection prior to the end of 2003, (App. at pg. 87); (ii) that the IRS had requested and the Bankruptcy Court had granted at least ninety (90) days to review the Amended Returns and the Application, (App. at pgs. 83; 315); (iii) that the parties had made initial disclosures in which the IRS had not, and the Debtors' estate had, identified all any individuals likely to have discoverable information, (App. at pgs. 125-30); (iv) that both parties had requested and the Bankruptcy Court had ordered that all discovery be completed on November 5, 2003, (App. at pgs. 93-96; 97-99; 100; 101); (v) that the Committee filed its *Prehearing Memorandum of Official Committee of Unsecured Creditors Regarding Administrative Claim of Internal Revenue Service* identifying each fact and expert witness to be presented, (App. at pgs. 110-15); and (vi) that the IRS late filed its *Prehearing Memorandum* wherein the IRS did not identify any fact or expert witnesses, and in which the IRS admitted that had not even begun to undertake an examination of the Amended Returns or the Application, (App. at pgs. 116-19).

First, the Bankruptcy Court's denial of the Motion to Continue did not prejudice the IRS because that ruling merely held the IRS to the discovery and trial schedule that it had participated in establishing, and subsequently agreed to abide by.  (App. at pgs. 83; 93-94.)  In addition, the Bankruptcy Court was aware of the representations of Flagship Bank regarding the settlement with the Committee, as well as the potential for costly and protracted litigation between those parties should the timing conditions of the settlement not be met.  (App. at pgs. 59-68.)  Moreover, no prejudice was suffered by the IRS due to an expedited discovery and

trial schedule in the Bankruptcy Court because both the Bankruptcy Code and the Internal Revenue Code anticipate the expediency of bankruptcy proceedings, see 11 U.S.C. § 505 (proscribing abbreviated review and examination periods for filings by bankrupt taxpayers); 26 U.S.C. § 6871 (requiring immediate assessment of taxes in bankruptcy and insolvency proceedings); 26 C.F.R. § 601.109(a) (same), and that all parties in interests, including the IRS, must respond and conduct themselves accordingly.  Lastly, as the Debtors' estate bore the initial burden of producing credible evidence, the IRS cannot be heard to complain that it was deprived of evidence necessary to its case:  as of the date the Bankruptcy Court denied the Motion to Continue, the IRS had been in possession of the Amended Returns and the Application for eleven (11) months, during which it was empowered, and in fact obligated, to conduct an investigation of the same to support the Administrative Claim, which the IRS admittedly did not do.  (App. at pg. 205.)

Therefore, when faced with the potential for substantial pecuniary harm to the creditors of the Debtors' estate, and the self-imposed circumstances that rendered the IRS unprepared for the Trial, the Bankruptcy Court properly denied the Motion to Continue. Since the Bankruptcy Court's denial of the Motion to Continue did not implicate an error of law, and did not otherwise substantially prejudice the IRS, this Court should affirm the Bankruptcy Court's order denying the Motion to Continue.

## CONCLUSION

For the reasons set forth herein, the Appellee respectfully submits that this Court should enter an order:  (i) AFFIRMING the order of the Bankruptcy Court sustaining the Objection; (ii) AFFIRMING the order of the Bankruptcy Court denying the Motion to Continue; and (iii) award to the Debtors' estate pursuant to 26 U.S.C. § 7430 all reasonable

litigation costs incurred in connection with the Trial and this appeal, including, without limitation, all reasonable attorneys' fees.

> OFFICIAL COMMITTEE OF
> UNSECURED CREDITORS
> INDUSTRIAL COMMERCIAL
> ELECTRICAL, INC.,
> I.C.E. MANAGEMENT CORP., and
> I.C.E.-CONN, INC.,
>
> By its attorneys,
>
>
> /s/ Michael J. Fencer
> _____
> Bruce F. Smith, Esq.  (BBO No. 467900)
> Howard P. Blatchford, Jr., Esq.  (BBO No. 045580)
> Michael J. Fencer, Esq.  (BBO No. 648288)
> JAGER SMITH P.C.
> One Financial Center
> Boston, Massachusetts 02111
> (617) 951-0500

Dated:  May 14, 2004

## CERTIFICATE OF SERVICE

I, Michael J. Fencer, hereby certify that on this 14th day of May 2004, I caused a true and accurate copy of the within *Brief of the Appellee* to be served upon Barry E. Reiferson, Esq., counsel for the United States of America, U.S. Department of Justice, Civil Trial Section, Northern Region, Tax Division, P.O. Box 55, Ben Franklin Station, Washington, DC 20044, via electronic mail at Barry.E.Reiferson@usdoj.gov.

> ___/s/ Michael J. Fencer_____
> Michael J. Fencer